## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br><br> v. <br><br> NATIONAL ASSOCIATION OF REALTORS®, <br><br> *Defendant*. | Case No. 1:20-cv-3356 |

## [PROPOSED] FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on November 19, 2020, alleging that Defendant, National Association of REALTORS®, violated Section 1 of the Sherman Act, 15 U.S.C. § 1,

AND WHEREAS, the United States and Defendant have consented to the entry of this Final Judgment without the taking of testimony, without trial or adjudication of any issue of fact or law, without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law, and without Defendant admitting liability, wrongdoing, or the truth of any allegations in the Complaint;

AND WHEREAS, Defendant agrees to undertake certain actions and refrain from certain conduct for the purpose of remedying the anticompetitive effects alleged in the Complaint;

NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:

## I.   JURISDICTION

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendant under Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1.

## II.   DEFINITIONS

As used in this Final Judgment:

A.      "NAR" and "Defendant" mean the National Association of REALTORS®, a non-profit trade association with its headquarters in Chicago, Illinois, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B.      "Agreement" means any agreement, understanding, pact, contract, or arrangement, formal or informal, oral or written, between two or more Persons.

C.      "Broker" means a Person licensed by a state to provide services to a buyer ("buyer Broker") or seller ("listing Broker") in connection with a real estate transaction. The term includes any Person who possesses a Broker's license and any agent or sales associate who is affiliated with such a Broker.

D.      "Client" means the person(s) with whom a REALTOR® is contracted with or otherwise has an agency or legally recognized non-agency relationship with respect to the purchase or sale of real property.

E.      "Management" means NAR's President, President Elect, First Vice President, Treasurer, VP of Advocacy, VP of Association Affairs, Chief Executive Officer, and Executive Committee.

F.      "Member Board" means any state or local Board of REALTORS® or Association of REALTORS®, including any city, county, inter-county, or inter-state Board or Association, and any multiple listing service owned by, or affiliated with, any such Board of REALTORS® or Association of REALTORS®.

G.      "MLS Participant" means a member or user of, a participant in, or a subscriber to an MLS.

H.      "MLS" means a multiple-listing service owned or controlled by a Member Board.

I.      "Person" means any natural person, trade association, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office, or other business or legal entity, whether private or governmental.

J.      "Rule" means any final rule, model rule, ethical rule, bylaw, policy, definition, standard, or guideline, and any interpretation of any Rule issued or approved by NAR.

### III.    APPLICABILITY

A.      This Final Judgment applies to NAR, as defined above, and all other Persons, including all Member Boards and MLS Participants, in active concert or participation with NAR who receive actual notice of this Final Judgment.  A Member Board or MLS Participant shall not be deemed to be in active concert with NAR solely as a consequence of its receipt of actual notice of this Final Judgment or its affiliation with or membership in NAR.

3

## IV.    PROHIBITED CONDUCT

NAR and its Member Boards must not adopt, maintain, or enforce any Rule, or enter into or enforce any Agreement or practice, that directly or indirectly:

1.    prohibits, discourages, or recommends against an MLS or MLS Participant publishing or displaying to consumers any MLS database field specifying the compensation offered to other MLS Participants;

2.    permits or requires MLS Participants, including buyer Brokers, to represent or suggest that their services are free or available to a Client at no cost to the Client;

3.    permits or enables MLS Participants to filter, suppress, hide, or not display or distribute MLS listings based on the level of compensation offered to the buyer Broker or the name of the brokerage or agent; or

4.    prohibits, discourages, or recommends against the eligibility of any licensed real estate agent or agent of a Broker, from accessing, with seller approval, the lockboxes of those properties listed on an MLS.

## V.    REQUIRED CONDUCT

A.    By not later than 45 calendar days after entry of the Stipulation and Order in this matter, NAR must submit to the United States, for the United States' approval in its sole discretion, any Rule changes that NAR proposes to adopt to comply with Paragraphs V.C-I of this Final Judgment.

B.      By not later than thirty calendar days after entry of the Stipulation and Order in this matter, NAR must furnish notice of this action to all its Member Boards and MLS Participants in a form to be approved by the United States in its sole discretion.

C.      By not later than five business days after the later of the entry of this Final Judgment or the United States' approval of the Rules proposed in Paragraph V.A of this Final Judgment, NAR must adopt one or more Rules, the content of which must first have been approved in writing by the United States in its sole discretion, that repeal any Rule that prohibits, discourages, or recommends against an MLS or MLS Participant publishing or displaying to consumers any MLS database field specifying compensation offered to other MLS Participants.

D.      By not later than five business days after the later of the entry of this Final Judgment or the United States' approval of the Rules proposed in Paragraph V.A of this Final Judgment, NAR must adopt one or more Rules, the content of which must first have been approved in writing by the United States in its sole discretion that require all Member Boards and MLSs to repeal any Rule that prohibits, discourages, or recommends against an MLS or MLS Participant publishing or displaying to consumers any MLS database field specifying compensation offered to other MLS Participants.

E.      By not later than five business days after the later of the entry of this Final Judgment or the United States' approval of the Rules proposed in Paragraph V.A of this Final Judgment, NAR must adopt one or more Rules, the content of which must first have been approved in writing by the United States in its sole discretion, that require all MLS Participants to provide to Clients information about the amount of compensation offered to other MLS Participants.

5

F.      By not later than five business days after the later of the entry of this Final Judgment or the United States' approval of the Rules proposed in Paragraph V.A of this Final Judgment, NAR must adopt one or more Rules, the content of which must first have been approved in writing by the United States in its sole discretion, that:

1.  repeal any Rule that permits all MLSs and MLS Participants, including buyer Brokers, to represent that their services are free or available at no cost to their Clients;

2.  require all Member Boards and MLSs to repeal any Rule that permits MLSs and MLS Participants, including buyer Brokers, to represent that their services are free or available at no cost to their Clients; and

3.  prohibit all MLSs and MLS Participants, including buyer Brokers, from representing that their services are free or available at no cost to their Clients.

G.      By not later than five business days after the later of the entry of this Final Judgment or the United States' approval of the Rules proposed in Paragraph V.A of this Final Judgment, NAR must adopt one or more Rules, the content of which must first have been approved in writing by the United States in its sole discretion, that require all Member Boards and MLSs to:

1.  prohibit MLS Participants from filtering or restricting MLS listings that are searchable by or displayed to consumers based on the level of compensation offered to the buyer Broker or the name of the brokerage or agent; and

2.  repeal any Rule that permits or enables MLS Participants to filter or restrict MLS listings that are searchable by or displayed to consumers based on the

level of compensation offered to the buyer Broker, or by the name of the brokerage or agent.

H.      By not later than five business days after the later of the entry of this Final Judgment or the United States' approval of the Rules proposed in Paragraph V.A of this Final Judgment, NAR must adopt one or more Rules, the content of which must first have been approved in writing by the United States in its sole discretion, that require all Member Boards and MLSs to allow any licensed real estate agent or agent of a Broker, to access, with seller approval, the lockboxes of those properties listed on an MLS.

I.      By not later than 10 business days after the later of the entry of this Final Judgment or the United States' approval of the Rules proposed in Paragraph V.A of this Final Judgment, NAR must furnish notice of this action to all its Member Boards and MLS Participants through (i) a direct communication, in a form to be approved by the United States in its sole discretion, that must contain this Final Judgment; the new Rule or Rules NAR devises in compliance with Paragraphs V.E., V.H., and V.I; and the Competitive Impact Statement; and (ii) the creation and maintenance of a page on NAR's website, that must be posted for no less than one year after the date of entry of this Final Judgment, and must contain links to this Final Judgment; the new Rule or Rules NAR devises in compliance with Section V; the Competitive Impact Statement; and the Complaint in this matter.

J.      By not later than 30 calendar days after the later of the entry of this Final Judgment or the United States' approval of the Rules proposed in Paragraph V.A of this Final Judgment,

NAR must publish to all Member Boards, in a manner subject to approval by the United States in its sole discretion, this Final Judgment and the NAR Rules adopted in compliance with Section V.

K.      By not later than 60 calendar days after the later of the entry of this Final Judgment or the United States' approval of the Rules proposed in Paragraph V.A of this Final Judgment, NAR must require all Member Boards to publish, in a manner subject to approval by the United States in its sole discretion, to all MLS Participants this Final Judgment and the NAR Rules adopted in compliance with Section V.

L.      The United States, in its sole discretion, may agree to one or more extensions of each of the time periods set forth in this Section V.

## VI.   ANTITRUST COMPLIANCE

A.      By not later than 30 calendar days after entry of the Stipulation and Order in this matter, Defendant must (i) appoint an Antitrust Compliance Officer and (ii) identify to the United States the Antitrust Compliance Officer's name, business address, telephone number, and email address. Within thirty days after the Antitrust Compliance Officer position becomes vacant, the Defendant must (i) appoint a replacement Antitrust Compliance Officer and (ii) must identify to the United States the replacement Antitrust Compliance Officer's name, business address, telephone number, and email address. The Defendant's initial appointment and replacement of an Antitrust Compliance Officer is subject to the approval of the United States in its sole discretion.

B.      The Antitrust Compliance Officer must:

1.      by not later than 30 calendar days after entry of this Final Judgment, furnish to all of Management a copy of this Final Judgment, the Competitive Impact

Statement filed by the United States in connection with this matter, and a cover letter in a form attached as Exhibit 1;

2.      by not later than 30 calendar days after entry of this Final Judgment, in a form and manner to be approved by the United States in its sole discretion, provide Management and employees with reasonable notice of the meaning and requirements of this Final Judgment;

3.      annually brief Management on the meaning and requirements of this Final Judgment and the antitrust laws;

4.      brief any person who succeeds a Person in any Management position on the meaning and requirements of this Final Judgment by not later than 30 calendar days after such succession;

5.      obtain from all members of Management, by not later than 30 calendar days after that Person's receipt of this Final Judgment, a certification that the Person (i) has read and, to the best of his or her ability, understands and agrees to abide by the terms of this Final Judgment; (ii) has reported any violation of this Final Judgment to Defendant or is not aware of any violation of this Final Judgment that has not been reported to the Defendant; and (iii) understands that his or her failure to comply with this Final Judgment may result in an enforcement action for civil or criminal contempt of court against the Defendant and any other Person bound by the Final Judgment who violates this Final Judgment;

9

6.      maintain a record of certifications received pursuant to this Section and a copy of each certification;

7.      annually communicate to Management and employees that they must disclose to the Antitrust Compliance Officer information concerning any potential violation of this Final Judgment or the antitrust laws and that any such disclosure will be without reprisal by Defendant; and

8.      by not later than 90 calendar days after entry of this Final Judgment and annually thereafter, the Antitrust Compliance Officer must file reports with the United States describing that Defendant has met its obligations under this Paragraph.

C.      Immediately upon Management's or the Antitrust Compliance Officer's learning of any violation or potential violation of any of the terms of this Final Judgment, NAR must take appropriate action to investigate and, in the event of a potential violation, must cease or modify the activity so as to comply with this Final Judgment.  NAR must maintain all documents related to any potential violation of this Final Judgment for the term of this Final Judgment.

D.      Within 30 calendar days of Management's or the Antitrust Compliance Officer's learning of any potential violation of any of the terms of this Final Judgment, Defendant must file with the United States a statement describing the potential violation, including a description of (1) any communications constituting the potential violation, the date and place of the communication, the persons involved in the communication, and the subject matter of the communication, and (2)

all steps taken by the Antitrust Compliance Officer or Management to remedy the potential violation.

     E.    Defendant must have its CEO or CFO, and its General Counsel certify in writing to the United States, no later than 60 calendar days after the Final Judgement is entered and then annually on the anniversary of the date of the entry of this Final Judgment, that the Defendant has complied with the provisions of this Final Judgment.

     F.    The United States, in its sole discretion, may agree to one or more extensions of each of the time periods set forth in this Section VI.

## VII.  COMPLIANCE INSPECTION

     A.    For the purposes of determining or securing compliance with this Final Judgment or of related orders such as the Stipulation and Order or of determining whether this Final Judgment should be modified or vacated, upon written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, and reasonable notice to Defendant, Defendant must permit, from time to time and subject to legally recognized privileges, authorized representatives, including agents retained by the United States:

     1.    to have access during Defendant's office hours to inspect and copy, or at the option of the United States, to require Defendant to provide electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendant, relating to any matters contained in this Final Judgment; and

     2.    to interview, either informally or on the record, Defendant's officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendant.

B.      Upon the written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, Defendant must submit written reports or respond to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment.

C.      No information or documents obtained pursuant to this Section VII may be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party, including grand jury proceedings, for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If a third party requests disclosure of information under the Freedom of Information Act, 5 U.S.C. § 552, the Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7. Defendant submitting information to the Antitrust Division should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7. Designations of confidentiality expire ten years after submission, "unless the submitter requests and provides justification for a longer designation period." *See* 28 C.F.R. § 16.7(b).

E.      If at the time that Defendant furnishes information or documents to the United States pursuant to this Section VII, Defendant represents and identifies in writing information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendant marks each pertinent page of such material, "Subject to

claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States must give Defendant ten calendar days' notice before divulging such material in any legal proceeding, other than a grand jury proceeding.

## VIII. RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## IX. ENFORCEMENT OF FINAL JUDGMENT

A.      The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. Defendant agrees that in a civil contempt action, a motion to show cause, or a similar action brought by the United States regarding an alleged violation of this Final Judgment, the United States may establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a preponderance of the evidence, and Defendant waives any argument that a different standard of proof should apply.

B.      This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the United States alleged was harmed by the challenged conduct. Defendant agrees that it may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and

in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.      In an enforcement proceeding in which the Court finds that Defendant has violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment, together with other relief that may be appropriate. In connection with any successful effort by the United States to enforce this Final Judgment against Defendant, whether litigated or resolved before litigation, Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as any other costs, including experts' fees, incurred in connection with that enforcement effort, including in the investigation of the potential violation.

D.      For a period of four years following the expiration or termination of this Final Judgment, if the United States has evidence that Defendant violated this Final Judgment before it expired, the United States may file an action against Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action, (2) all appropriate contempt remedies, (3) any additional relief needed to ensure the Defendant complies with the terms of this Final Judgment, and (4) fees or expenses as called for in this Section IX.

## X. EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire 7 years from the date of its entry, except that after 5 years from the date of its entry, this Final Judgment may be

14

terminated upon notice by the United States to the Court and Defendant that the continuation of this Final Judgment no longer is necessary or in the public interest.

## XI. UNITED STATES' RESERVATION OF RIGHTS

Nothing in this Final Judgment shall limit the right of the United States to investigate and bring actions to prevent or restrain violations of the antitrust laws concerning any Rule or practice adopted or enforced by NAR or any of its Member Boards.

## XII. NOTICE

For purposes of this Final Judgment, any notice or other communication required to be provided to the United States must be sent to the person at the address set forth below (or such other address as the United States may specify in writing to Defendant):

> Chief
> Office of Decree Enforcement and Compliance
> Antitrust Division
> U.S. Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530

## XIII. PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final Judgment and the Competitive Impact Statement, any public comments thereon, and any response to comments by the United States. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: _____

[Court approval subject to
procedures of Antitrust Procedures
and Penalties Act, 15 U.S.C. § 16]

_____
United States District Judge